The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. You may be seated. Ms. Avestia, good to have you with us. You represent the petitioner? Yes, it's an honor to be here. Go right ahead. I'm sorry, I didn't know. Go right ahead. Of course. Nice and loud. Hear me talking to you, you can hear me. All right? Yes.  Of course. Slowly and loud. Of course, of course. Our oral argument will be concentrated on three issues. However, I tried to put most of my time on the first one. Well, you're neither loud nor slow yet. So why don't you get closer to the microphone or get it closer to you. How is it like that? Better? So the immigration judge should not have entered an adverse credibility determination after the counsel for the DHS and the petitioner stipulated to the credibility of the petitioner. Even if the immigration judge had that authority, still, the adverse credibility determination was not supported by substantial evidence pursuant to Kamara B. Ashcroft. Also, even if the petitioner was not credible, still, she would be more likely than not to be credible. As to the first point, the immigration proceedings are civil in nature, and that is long been established in the case law, including the Supreme Court cases like Feng Yuting versus the United States. The stipulation of facts by the parties are generally binding for civil courts. Generally, in civil proceedings, when there is no genuine dispute between the parties, the case can be dismissed summarily in full or in part, and the judge has limited discretion. Did you ever raise this argument before the board? Yes, Your Honor. Oh yeah? Where would that be in the JA? Before the board, Your Honor, correct? Correct. All right, let's assume you didn't raise it. Has the government claimed that you didn't raise it? No. Well, the government agrees she's credible. The government agreed on credibility, didn't it? Yes, Your Honor. Before you had the hearing? Yes, Your Honor. They stipulated the credibility? Yes, Your Honor. Then you had the hearing and the IJA said she's not credible? Yes, Your Honor. And you say that the IJA couldn't do that? Yes, Your Honor. But the IJA is called judge? Correct. And one of the jobs of the judge is to determine credibility, try to figure out what the truth is. So why can't a judge decide credibility even if the lawyers don't agree? I mean, judges rule against lawyers all the time. Of course, Your Honor. Well, in the government, you said she's credible. The government said she's credible. But the IJA said she's not credible. Your Honor. Aren't those the facts? Yes, Your Honor. We stipulated to the credibility on the record. Pardon? I'm sorry. Yes, Your Honor. We stipulated as to the credibility. You stipulated credibility. That means the government, the Attorney General of the United States, his lawyer, and your client's lawyer, was that you? Were you at the hearing? Yes, Your Honor. And you agreed she's credible? Yes, Your Honor. Well... And the judge disagreed? I thought... Is that the exact record? I wasn't sure that that was exactly the way things went down. I thought there was an agreement and the judge said, yes, I accept that subject to a brief examination. Your Honor, the brief examination was only pursuant... No, no, no. Is that what the judge said? The judge exactly said I'm going to put her under oath to swear to the content. Right. And I accept this all subject to putting her on for this brief examination, right? And so he asked her a couple of questions. He found that there were some inconsistencies. And he said, now, because of that, I'm going to have a further examination. Is that what happened? Yes, Your Honor. However, she was supposed to... She was supposed to... The examination happened pursuant to matter of fait fait. That is the BIA. I'm sorry, I didn't understand what you said. Of course. So the examination was only pursuant to matter of fait fait. So it was only for the respondent to swear to the content of her application. He asked her a couple of questions and he found she was inconsistent there in her response. She did not ask, actually. Before anything happened, she directed the DHS attorney to cross-examine the respondent. Okay. Yes. Assume that the facts are as I'm telling you for one moment here. So the district judge says, yes, I accept this... Or the immigration person. I accept this subject to a brief examination. We agree on that, right? Yes, Your Honor. Okay. And when he asked her the questions, like two questions, he found there was an inconsist... He thought an inconsistency. So he said that and now I'm going to have a fuller examination. Yes, Your Honor, that's... All of that is true, right? Yes, exactly. All right. That's all I want to know. Yes. So... Now... You're saying the IJ couldn't do that? Yes, Your Honor, because I argue that the stipulation between the parties are... Responding? Yes. So you're saying that we review that for abuse of discretion or review that de novo? Your Honor, I believe it's a mixed matter, but it should be like de novo as a matter of law. Because the question... It doesn't matter? Is that what you said? No, I said it's a matter of law. Do we review that for abuse of discretion on the part of the IJ, the credibility determination, to go further?  Or do we review it de novo as a matter of law? I think this part of my argument, that the immigration judge doesn't have the authority to do so, is a matter of law, de novo. Because it's about if the stipulation between the DHS and the respondents are binding on the immigration judge or not. So the answer, again, is not exactly clear. However, generally such stipulations are allowed under the INA and in the case law of the Board of Immigration Appeals. As long as for the respondent, as long as these waivers and stipulations are valid, as long as they are given knowingly and intelligently. So also on behalf of the DHS, they can concede and agree and stipulate. And those stipulations and agreements will be binding on them in further sessions of the removal proceedings. Did you stop the examination of your client and tell the judge she couldn't examine her anymore? Your Honor, the judge did not ask for our opinion. No, but how did you preserve this error? You say it's error for the judge to find her not credible. How did you preserve it? The claim you're making now that the judge couldn't do this, how did you preserve that in the hearing? Your Honor, I only brought to the judge's attention that even if there were some purported forgetfulness, it was because my client had dissociative amnesia and also referred her to the record. Still, the judge did not accept this and ask for a full examination. Did you stand up and say, Judge, you can't have a full examination. We have agreed that she's credible. No, Your Honor, I did not. I did not, actually. The pre-hearing conferences and stipulation are encouraged under the INA. I refer to section 18.44. Also, the OIR guidance on pre-hearing conference and immigration proceedings provides that counsel for the parties must have the authority to stipulate about all matters, including the possible resolution of the proceedings. There are cases from the Board of Immigration Appeals, a matter of B.A. Wonson. I'm sorry if I mispronounced it. Also, from the BIA, it states that the parties have an important role to play in the removal proceedings. And their agreement on issues or proper course of action should, in most instances, be determinative. I understand that the argument that I'm bringing also may seem at odds with INA 1229AB and Kinterow v. Garland. That provides that the immigration judge has a duty to establish the record. Sorry, develop the record. However, I do not see any opposition between the two statements that is made. Because when this court is explaining the duty of the immigration judge to develop the record, they are using the analogy of the social security court. They explain that the purpose of the duty to develop the record is to ensure the fairness of the process for the non-citizen who is unfamiliar with the immigration courts and the complex body of immigration laws. Now, unlike those courts, the removal proceedings are adversarial. The government does not need any protection against an unfair stipulation, I assume. Also, then, if we see two other cases about this duty to develop, like Matter of Faith that I was referring to, we see that the Board of Immigration Act would also provide that the duty of the immigration judge to examine a person under oath orally is to put her under oath. We question her about whether the information on the written application is complete and correct. And then, unless the parties stipulate otherwise, she needs to continue. But if the parties stipulate, why the examination should continue? The other part is that, again, when both DHS and the respondent agree on one matter, there is no dispute before the court why the judge should be allowed to create a dispute and resolve it afterwards. My other point is that, also, maybe it's imaginable to say that the purpose of developing the record is to provide the parties with a meaningful opportunity to appeal. This is what the BIA provides in Matter of AP 1999. However, for example, in this case, the record was fully developed because voluminous exhibits were submitted to the courts and could have been used on the appeal. Now, besides this point, even if the judge had the authority to do this… We'll charge it to your rebuttal, Tom, if you want to. That's fine. I just wanted to rest on the fact that, even if that was not the case and the judge had the authority to do that, still, the adverse credibility determination was not supported by substantial evidence. And also, the Board of Immigration actually used the wrong standard for credibility. Evaluation, they said that the examples of credibility went to the heart of the matter, the claim. However, this is not the standard of the Real ID Act. They also did not give any weight to the respondent's psychological evaluation, stating that she has dissociative amnesia. She forgets things under stress. Thank you very much. Thank you. Ms. Lum? You're here for the Attorney General? I am, Your Honor, for the United States of America. Good to have you with us. Thank you. It's a pleasure to be here. May it please the Court. Your Honors, I'm really happy that you brought up this issue because I was, frankly, when I saw on your website that the issue was listed as whether the immigration judge erred by directing the government to question the petitioner during the hearing despite credibility stipulation, and by later making an adverse credibility finding, listing that as an issue. It was a complete surprise to me. I will submit to you, if you turn to the hearing transcript on page 96, the judge says to the government, uh, we're, uh, excuse me, uh, and the department, you'll be stipulating to credibility in this case? Government attorney to judge. I'm on page 98, Your Honors. Your Honor, as to the fact, as the facts are laid out in her affidavit and the psychological evaluation, only, only the government is stipulating that those facts match. He makes it clear. Then the IJ says, I don't think that the case matter of Fifi forecloses this, but she has only have to take the stand to the contents of the application and undergo a brief examination by someone in order to meet the requirements. So that was made clear. Continues to page 99. Continuing the hearing, the government asked Mrs. Lopez, during the time you lived with your parents, your parents experienced problems with various criminal elements, right? And she says, no, before that, they never had any problems with that. Then the government says, but your application with your affidavit states that you had problems with that, as does your father's affidavit. And the government attorney further questions that. So it appears your family did have problems on page 107. And she insists, however, he's never had, we never had problems before I began my relationship with her deceased husband. So you're kind of jumping ahead to the facts. I understand what you're saying, but there are, her argument was that the government had agreed to stipulate to fix. And what you have to be saying is in the brief examination, which the district court said was a condition for the government stipulating, right? The brief examination, I'm going to do this. I will accept it. But I, the judge, I'm going to make a brief examination. And during that brief examination, he concluded that there were inconsistencies. Correct. And that's where he went to your facts. But you have to get by her essential argument is he could only have the brief examination and that's all. No, that's not correct. Your honor. He goes, no, but you skipped over that point. No, your honor. Again, I refer you to the beginning. It says I stipulate the government attorney as to the facts are laid out in the affidavit. No, but what about what the judge said? The judge said I have to, she has to get on the stand to swear to the contents of it. And that's what the point is. She was on the stand. But I think the judge also said we're going to have a brief. And then when she couldn't, when she, in other words, you kind of, your ship's passing in the night. You have to go to her original argument that the government agreed to the stipulation. And you have to tell us why you were able to put more evidence in that argument. Okay. Our argument is that the judge, what the evidence was, because you're quite right. Right. The judge said he, he stated, I'll agree. He said, I think that's fine to stipulate to that. But he, he cites the board case. I think it forecloses it, but she has to take the stand to swear to the contents of that affidavit. Did she do that? She did not. She took the stand. Yes, she is. She's on the stand. You're on page 107. Did she swear to the contents of the affidavit? She, she did. She did exactly what the judge said to do. Take the stand and swear to the contents of the affidavit. And that's when the judge said, you say in your own affidavit, you say the gangs would extort the shop routinely before, before you had a relationship with the person. Which one of those versions helps her the most? I'm sorry? Which one, which version? You say there are two versions of her testimony. Yes, your honor. And which one, and which version helps her the most? The one that helps her says the, that the gangs only came after us after I had a relationship with her deceased husband. However, her affidavit states differently and is supported by her father's affidavit. And then when she was asked, why the discrepancy, your honor? And she says, I can't remember. So the judge, again, pointed to the affidavit, pursuant to his stating that he was going to question her on this, in his caveat to accepting the government stipulation. Again, and again, the government stipulation states he only stipulates to the fact that her affidavit and the psychological report jive. They say the same things. And that's on page 98, your honor. So, and, and you're, you're correct in that just because they've stipulated to that little portion, the judge, the IG is not foreclosed from evaluating credibility. That's what the judge is for. Well, he said he was accepting the stipulation. The stipulation as to the, if. If she would take the stand, swear to the contents of the stipulation. In order to meet. And, I'm helping you. Why don't you just be quiet for a moment? Okay. And undergo a brief examination. That's what happened. And during the brief examination, the judge concluded that she, that further examination was necessary because she was contradicting herself. Exactly, your honor. And that, and that is found on page 108. He, he takes that. So what are we arguing about? We're not arguing. I'm, I'm telling you, well, I'm, I'm saying that. You're arguing the government didn't stipulate. You're trying to say you didn't stipulate, but you did stipulate. And Judge Monson explained it to you, and then you went on. No, you're. Now, the question is, I think, whether she's tied with some relief. Uh, here, or, uh, particular social group or something. Okay. She claims she's, falls within a one, I think, two different types of particular social group. That's correct. That's getting to the merits, however. That should prevent you all from sending her back to Guatemala. Okay. She's going to be killed if she goes back to Guatemala. And, and we certainly should talk about that. Let's talk about the stipulation finally and completely. You believe that the stipulation was, I'll accept this stipulation. This is the court saying, subject to a brief examination. Correct, Your Honor. And during the brief examination, the court concluded that it could not accept the stipulation as it stood because she was not being consistent. Correct, Your Honor. And that's why she doesn't think the stipulation controls. And with the indulgence of. And that is your position. That is. Now we will hear from the other side, although she only has about four seconds left because she's used it all. Okay, but. But now you, with that in mind, I think that's your position anyway. Is that right? That's correct, Your Honor, but may I go a little bit further into the hearing where the judge explains, uh, when he confronts her with this, uh, discrepancy, he says, okay, I'm now going to have to stop this. We're going to have to have a full hearing because the court now has concerns about her credibility. And the judge can do that. Uh, the fact that the government stipulated to an affidavit and. I want to agree with you. The judge could do that. Then where do you go? Then. Then you had a hearing. It continues, Your Honor. Then he says to the. Okay, we got you to the hearing. Now talk to us about that. I'm telling you, Your Honor, on page 108. You have two versions of her testimony. That's correct. One, the affidavit and one at the hearing. Correct. And what if I said. I would give a relief under either version. Then what do you say? Well, we haven't gotten there yet. I'm telling you, I'll get there. But that's getting to the merits, Your Honor. What I'm saying, her credibility makes no difference. Well, we have two. Second version. If it's credible, she's entitled to relief. Then then what's the government's position? The government's position is she's not because. She's not what? She's not entitled to relief because even. Under any version. Under any version. That's what I want you to say. Except her second version. Because she claims she has been persecuted and her family persecuted. Or she has a fear of being persecuted because of. She is a member of a particular social group defined as Guatemalan women. Perceived to have information regarding Guatemalan military. That's her first one. Her second one. Or as a family member of a former Guatemalan military. Which one of those is a better argument for her? None. No, you didn't hear me. Which one of those arguments is best for her? She can try either one. Which which one is best for her? Just listen to me and answer the question. I guess as the second one, maybe. Well, I would say that's true. That is the second one. Correct. And her husband or her boyfriend was in the military. He was killed. He was in the military school for three months. Quit the military. Started working as a trucker. And that again, that's getting into the facts. And the whole point of this is that the gangs were attacking him. Not because of any military connection. There's nothing in the record that says that. They were attacking him and the family because they're gangs. And they asked him to join the gang. And he said no. I would like to also point out one other issue that Petitioner mentions, Your Honor. She claims that I.J. was wrong in his weighing of the evidence. This court doesn't re-weigh evidence. But she, throughout her whole brief and her argument has to do with the Petitioner has memory loss based upon this report in evidence. And I would like to submit on page 332 of the report, the clinical counselor. I don't believe, sometimes she refers to him as a psychologist or psychiatrist. That is not included in his credentials. But nonetheless, his diagnostic findings say PTSD, depression, separation, anxiety, social anxiety, several other things. It doesn't mention memory. In the very next paragraph, it states, my professional opinion. Ms. Reed meets the following PTSD criteria that demonstrates how debilitated she was during the period. Note, this is very important because I think Petitioner misses this point. The bold underlying criteria significantly contributed to her emotional debilitated state. There's a whole laundry list of the PTSD stress disorder as cited in the DSM-5 criteria, which she also cites in her brief. And that is a manual. It's called the Diagnostic and Statistical Manual, 5th edition criteria. And what this is, is the counselor lists all the criteria. But he's saying, the things I relied on are the bolded and underlined. Practically everything is bolded and underlined, except criteria D, and that's on page 333, inability to remember an important aspect of the traumatic events. And she relies on that, but that's not part of the diagnosis. And he clearly sets that out up front. I bring that to your attention, Your Honor, because she averves the immigration judge discounted all that, found an adverse credibility finding when she had memory loss and she was diagnosed. She was not. It's not in the diagnosis. I would also point your attention to the Juniper case, Juniper v. Davis. Again, it's not exactly on point, but it was decided by this court in 2023. It's at 74, 4th, Fed 4th 196, where the petitioner argued the district court impermissibly discredited petitioner's statement because of natural memory lapses, claiming the district court improperly conflated memory with credibility. And this is a very good opinion in that it states, it found the district court's adverse credibility finding is supported by the record. In its written opinion, the court found the person sincere but not credible. What the court concluded from watching this person testify that they just did not know what they were talking about. And it found based on both their shifting stories and their demeanor in testifying, which is the case here, that no reasonable juror would have believed their timeline of events over the coherent and consistent timeline and accounts of others as in her own affidavit as in the affidavit of her father. And she was confronted with that. And she was given the opportunity. The attorney was given the opportunity following that and to question her client further. And she did. And the client could not answer. And she said, I don't remember. And the judge accepted it. The judge said, OK, well, she doesn't remember that. But we have this other evidence. And he also said, as the board agreed, that there was no other objective evidence to support her claims. And again, I will point you, even let's assume she's credible. She still cannot prevail because her two bases for prevalence are she was attacked or her family was attacked because her former husband was a member of the military. And again, there's no nexus there. The only harm she suffered, and she says that in her testimony, is that she was abused by her former husband, who is now dead, and she was abused by a friend of his. And it's unfortunate, Your Honor, but that has absolutely nothing to do here. So, again, the standard of review for this court, Your Honor, is substantial evidence. And even if this court would disagree with the exact finding, as long as there's substantial evidence and it's a reasonable finding by the IJ, and it is, and it's supported by evidence, then this court has to affirm. And it is the judge's job to assess credibility, notwithstanding any kind of stipulation. And as he recognized, he had the right to just make sure that the stipulation was supported. And in this case, again, I draw your attention to that trial hearing transcript that says, the government attorney stipulates to her affidavit and to the psychological report being considered the facts of the case. That was the stipulation. But you no longer stipulate to that. No, Your Honor. Well, no, Your Honor. The government doesn't stipulate that anymore. Well, I think— No, you don't stipulate that anymore. You say that her, the facts are otherwise. We're not saying that the stipulation— Again, the government only said that this affidavit and this report say the same thing. And in many respects, they do. But the fact is, when she was substantiating that position, subject to the caveat by the judge that I'm going to just make sure, that didn't play out. And as the judge said, I got to stop this. We have to have a full hearing because this creates a credibility issue. And Petitioner's attorney, go ahead and question her and let's resolve this. And instead, Petitioner relied on this memory loss problem, which she says the report diagnoses and it does not. And she relies upon that. If there are no further questions, we submit that the adverse credibility decision is more than supported by substantial evidence, Your Honor, and ask that you affirm the agency's decision. Thank you. Thank you. Ms. Avrastia? We have one minute. Your Honor, actually, the report does mention that she had these criteria. It says on page 333. It does not say that she doesn't have it. It just said that both underlying criteria specifically contributed to her emotional debilitated state. It doesn't say that the other does not, she doesn't demonstrate that. And secondly, that, again, even if the respondent, sorry, the Petitioner's affidavit to her because of simple recruitment, it is still enough to establish a nexus because she is the family member of someone who is being recruited. That does not recruit her from being a family member of that person, right? Yes, but he has to be, if he had been in an automobile accident, a true accident, she wouldn't be recovering. So you're looking at the wrong part of the analysis. It has to be because he has been put upon by, because of his political beliefs or because whatever, right? And that's the point that they say, no, that's not the case. This was just a brawl. Well, the thing is that, okay, there are evidence on the record that the husband was murdered, right? So that is actually, because there is autopsy reports that the manner of death was a gunshot and murder. And there is news reports about her, his murder, news report about the murder of the nephew. So I don't understand why the board or like the IJ are talking about no independent evidence on the record. At the end of the day, there is an autopsy report. There is a death certificate of the husband showing that he was murdered. There is news report. There are others. I don't think there's any argument that he wasn't murdered. The question is why? And that's where she says the evidence is the other way. And I haven't seen anything that definitively proves or even suggests that it was the gang or because of his beliefs. He was in a fight or he was murdered by somebody who didn't like what he was doing. That's the least, that's the submission. You're like the issue of the credibility aside right now, because I will not have time. But if the husband is killed because of something that is not even a protected ground, still, if the wife is targeted because of her husband, doesn't it? Not if there's not a protected ground. I'm sorry? Not if there's not a protected ground. If she is targeted because she is the family of her husband? And he's killed for a non-protected ground? Because at the end, she is targeted because of him. Family membership is protected ground. So, for example, it would be like Hernandez Avalos. Like when the child was targeted just for recruitment, right? That's not a protected ground. But the family member of him, sorry, of the child that was being targeted, was targeted on a protected ground. That was the family member of this child that was being targeted. So, the nexus is the family membership. So, now, if the family member died, for example, for recruitment, that is not a protected ground, actually. Still, it does not preclude the family member of being targeted on family membership. I really don't understand your argument. In other words, if you have related to somebody who is killed, let's just take it out of these facts, who is knifed to death, do you recover because you relied on that person? You have a familial relationship with them? I just don't understand where that goes. You have to have a protected ground somewhere. Oh, no. I mean, sorry, I think that what I mean is that if, because the government argues that why the husband was killed was only for recruitment, right? But, again, that's not a protected ground. I can see that, of course. However, the wife was being targeted because of the husband. So, that is a protected ground. Who cares if the husband was being targeted because of recruitment or not? Do you have a case that says that? Yeah. Where we have the person that is murdered, attacked, whatever, not on a protected ground, but just because somebody is related to somebody who is killed at random, that person gets recovery? No, Your Honor, I'm not saying that at random, but what the government is arguing is that, or at least they were arguing it at the court, it was that the Hyman husband was targeted by the gang for recruitment purposes. I can see that that isn't recruitment alone. It's not a protected ground. I understand that. However, still, the family members of people who are being recruited are generally found to have been targeted based on a protected ground. That is family membership. There is case law for that, yes. Your Honor, because I've out of time, Your Honor, actually. Thank you very much. Thank you very much. We appreciate it. And rather than come down and greet you in the well of the court, we're going to ask you to approach the bench, and we'll greet you each. And then, Madam Clerk, we will adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning.
judges: Robert B. King, Diana Gribbon Motz, Henry F. Floyd